MARY MACFADDEN, PLAINTIFF, v. BERNARR MACFAD-
DEN, *ET ALS.*, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided August 28, 1957.

244

*Messrs. Carpenter, Bennett, Beggans & Morrissey (Mr. Charles B. Collins, appearing),* attorneys for plaintiff.

*Messrs. Losche & Losche (Mr. George F. Losche, appearing),* attorneys for defendant Bernarr Macfadden Foundation, Inc.

*Mr. W. Eugene Can Filippo,* attorney for executors of the estate of Bernarr Macfadden, deceased.

FREUND, J. S. C. This is an action for specific performance of a provision in a separation agreement.

On April 7, 1932 Bernarr Macfadden, now deceased, and the plaintiff Mary Macfadden, husband and wife since 1913, entered into a separation agreement which expressly provided that he would supply her with a home during her lifetime by permitting her and their children "to use the home in Englewood, New Jersey; or" by alternative provisions of no present concern. The agreement further pro-

vided that the plaintiff would bear three-tenths of the up-keep and carrying charges of the home. The Macfaddens had lived together in the Englewood home since 1927, but in 1930 Mr. Macfadden left to live elsewhere. Mrs. Macfadden has continued to reside in the home up to the present time. During her occupancy of the premises, until about the year 1953, all taxes and maintenance charges were paid by Macfadden and the defendant, Bernarr Macfadden Foundation, Inc., but they have not been paid since 1953 and are presently in default.

In accordance with the agreement, plaintiff discontinued an action in the Supreme Court of the State of New York in which Macfadden was a party; additionally, she released and surrendered to Macfadden and Macfadden Publications, Inc. certain claims she asserted against them and surrendered certain shares of stock in the corporation which she held by virtue of a deed of trust created by Macfadden.

Macfadden died testate on October 12, 1955. In the present proceedings his executors are made defendants, together with the Bernarr Macfadden Foundation, Inc. and others. The Bernarr Macfadden Foundation, Inc. is a New York membership corporation authorized to transact business in New Jersey. It has held the title to the Englewood property since 1937, and in December 1954 requested plaintiff's permission to use a portion of the home for its offices but she declined. In 1955 it advertised for sale the property. Thereupon plaintiff filed a complaint in the instant proceedings charging the Foundation to be a corporate disguise and the *alter ego* for Bernarr Macfadden and seeking protection of her right to the use of the premises in accordance with the agreement. She also seeks a declaration of her rights in the property; and an order directing the defendants to pay the arrearages and current taxes and carrying charges against the property and to make all necessary repairs. Pursuant to a preliminary application an interlocutory injunction was granted restraining the disposal of or interference with the plaintiff's occupancy and use of her home. Subsequent to the issuance of the restraint the

Foundation entered into an option agreement giving prospective purchasers the privilege of purchasing the premises occupied by the plaintiff, subject to the restraining order. The option agreement was executed by Bernarr Macfadden, as president of the Foundation.

The executors of Bernarr Macfadden's estate contend that the obligation of the decedent to provide a home for plaintiff during her life was in lieu of alimony and hence that it terminated upon his death. The foundation argues a number of points which fall into two categories; one, the same contention made by the executors; and second, that it is not a stock corporation but was organized for public trust purposes and that therefore the conventional rule pertaining to piercing of the corporate veil is not applicable.

In 1946 Macfadden obtained a divorce from the plaintiff in a Florida court, where consideration was given to the agreement in question. The final decree of that court provided, *inter alia,* that "support of the wife having been adequately provided for by separate agreement, no adjudication thereon is made," but retained jurisdiction in the event that subsequent developments justified further consideration of support for Mrs. Macfadden. Additionally, the validity of the agreement has been upheld in prior litigation between the parties in the Court of Chancery in this State and in the Supreme Court of the State of New York. *City Bank Farmers Trust Co. v. Macfadden,* 131 *N. Y. S.* 2d 232 (*Sup. Ct.* 1954). On June 20, 1934 our former Court of Chancery by a final decree, with the consent of Macfadden, ordered that the agreement of the Macfaddens, dated April 7, 1932, "be specifically performed and carried out by the said Bernarr Macfadden, in accordance with its several terms, up to the date of this decree." This court concurs with the express or implicit ruling of these cases that the agreement in question is valid.

The contractual engagement by Macfadden to provide the plaintiff with a home for life in the Englewood property is not alimony. The power of a court to award alimony is purely statutory, and as used in our statute has

a technical signification, *N. J. S.* 2A:34–8 and 2A:34–23. Its purpose is to require the husband to make periodic payments to the wife for her support commensurate with his circumstances and her necessities. It is a purely personal right in the nature of an annuity. *Lynde v. Lynde,* 64 *N. J. Eq.* 736, 753 (*E. & A.* 1902); *O'Loughlin v. O'Loughlin,* 12 *N. J.* 222, 229, 230 (1953). The obligation to pay alimony terminates upon the death of the husband. *Modell v. Modell,* 23 *N. J. Super.* 60 (*App. Div.* 1952). However, the obligation undertaken by Macfadden to furnish a home for plaintiff for life did not terminate with his death; it continues as an obligation of his estate. The reason for this is two-fold: (1) it is not alimony but a contractual obligation to furnish his wife with a home for life; and (2) the agreement expressly provides in paragraph 18 thereof that it shall be binding upon his executors, as follows:

"In all respects this agreement shall be binding on the parties hereto, their heirs, representatives and assigns and shall not be subject to change, amendment or review."

█ A deed by a husband conveying to his wife a life estate in realty owned by him does not terminate the life estate upon his death. *Linker v. Linker,* 32 *N. J. Eq.* 174 (*Ch.* 1880); *Herbert v. Alvord,* 75 *N. J. Eq.* 428 (*Ch.* 1909); *Andreas v. Andreas,* 84 *N. J. Eq.* 375 (*Ch.* 1915); *Strong v. Strong,* 136 *N. J. Eq.* 103 (*E. & A.* 1944). In like manner, an agreement by the husband to provide a home for the use of his wife for life cannot be classified as an obligation to pay alimony, terminable upon his death. He obligated himself for the performance of this agreement and it will be enforced in a court of equity. *Aspinwall v. Aspinwall,* 49 *N. J. Eq.* 302 (*E. & A.* 1892); *Mockridge v. Mockridge,* 62 *N. J. Eq.* 570 (*Ch.* 1901).

██ The plaintiff argues that the Foundation is the *alter ego* of Macfadden and that its corporate form should be pierced. It is entirely settled that a corporate form will be penetrated by equity where it is used as a shield behind which injustice is sought to be perpetrated or where

the corporate cloak is used as a subterfuge to justify wrong. *Irving Investment Corp. v. Gordon,* 3 *N. J.* 217, 223 (1949). When the interests of justice are to be served, a court of equity will disregard the corporate entity and the stockholders will be regarded as though they were an association of individuals. The theory of a corporation being a legal entity is but a legal fiction—equity will look through the form and discern the substance. If a fraudulent purpose or use of a non-pecuniary association or corporation is established, the power of a court of equity to pierce the corporate entity exists even though it has no stockholders and its formation ostensibly is in the public interest. *Whitfield v. Kern,* 122 *N. J. Eq.* 332, 346 (*E. & A.* 1937); *Irving Investment Corp. v. Gordon, supra; Newark Ladder & Bracket Sales Co. v. Furniture Workers, etc.,* 125 *N. J. Eq.* 99, 102 (*Ch.* 1939); *Frank v. Frank's Inc.,* 9 *N. J.* 218 (1952). However, unless such a fraudulent purpose or use is disclosed, there is no justification for attacking the corporate structure.

The Englewood house had been the home of both Bernarr and Mary Macfadden from the time of its purchase until about 1930 and has continued to be the plaintiff's home until the present time. Although Macfadden testified by deposition that in 1927 he had paid the purchase price for the Englewood home, title to the property was never in his name but, rather, in some corporation over which he had control and in which he was the dominant personality. Apparently, it was his practice to operate his various business enterprises through corporate structures for his personal benefit.

Title was taken initially in the name of Garden Suburbs, Inc., by deed dated September 3, 1927. Thereafter it was conveyed to Bernarr Macfadden, Inc., a New Jersey corporation, by deed dated November 7, 1929, which corporation subsequently changed its name to New Jersey Commonwealth Realty Corporation. The stock of the New Jersey Commonwealth Realty Corporation was owned by Vitolyzed Air Corporation, the controlling interest of which, if not the

entire stock, was owned by Macfadden. In 1931 Macfadden organized Bernarr Macfadden Foundation, Inc., defendant herein, ostensibly a non-profit organization for public purposes and transferred his stock holdings in Vitolyzed to it. In 1937, being advised that it would be advantageous for tax purposes, the Foundation caused the Vitolyzed and New Jersey Commonwealth Corporation to be dissolved. The New Jersey Commonwealth Realty Corporation thereupon conveyed the Englewood property to the Foundation, by deed dated March 24, 1937.

■■ According to the by-laws of the Foundation, Macfadden possessed ten votes while each of the other eight members held but one. No one other than Macfadden, so far as is disclosed by the testimony, contributed any funds or property to any of the various corporations. It is clear that these corporations were the creatures and pawns of Macfadden. Nevertheless, there is no testimony or evidence of fraudulent purpose or objective. The mere use of corporate entities as devices for the holding or transfer of title is not in itself fraudulent. However, the proofs disclose that although the legal title was in various corporations which he controlled, Macfadden in his lifetime was in fact the owner of the realty and treated it as his property. In reason and justice, Mrs. Macfadden is entitled to the benefit of the agreement made by Macfadden, irrespective of the form employed to veil his ownership. Equity will not permit the doctrine of corporate entity to be used for the purpose of defeating justice. *Garford Trucking, Inc., v. Hoffman,* 114 *N. J. L.* 522, 529, 530 (*Sup. Ct.* 1935); *Telis v. Telis,* 132 *N. J. Eq.* 25, 29 (*E. & A.* 1942).

■ The Foundation apparently recognized the outstanding interest of the plaintiff for it did not disturb her possession and use of the premises from the time of the agreement in 1932 until the recent happenings which precipitated this proceeding. Nor has plaintiff's interest been questioned by the various title owners since the date of the agreement, even though the Foundation and its predecessors in title were under a duty to inquire of the plaintiff, as the person

in exclusive possession of this dwelling house, what rights or interest she possessed in the premises. The defendants are chargeable with notice of such facts as the inquiry, if made, would have revealed. Such inquiry would have disclosed to the Foundation, if it did not already know, that she had a right to occupy the premises as her home for life; that she has a life estate in the use and possession of the premises. *Wood v. Price,* 79 *N. J. Eq.* 620 (*E. & A.* 1911); *La Combe v. Headley,* 91 *N. J. Eq.* 63 (*E. & A.* 1919); *Schnakenberg v. Gibraltar Savings and Loan Ass'n,* 37 *N. J. Super.* 150, 157 (*App. Div.* 1955). Accordingly, the title held by the Foundation is subject to the life estate of plaintiff in accordance with the written agreement of April 7, 1932, between plaintiff and Bernarr Macfadden.

 As previously observed, plaintiff, pursuant to the agreement, was to bear three-tenths of the costs of maintaining the home. Yet Macfadden or his corporations including defendant, Foundation, paid all the taxes and carrying charges until 1954. This voluntary payment constituted a waiver of the contributions which plaintiff was to have made, but it does not relieve plaintiff from the future performance of her obligations under the agreement, nor does it discharge her obligation as to the items presently in default. *McCrory Stores Corp. v. S. M. Braunstein, Inc.,* 99 *N. J. L.* 166, 168 (*E. & A.* 1923). Thus, a judgment will be entered directing the Foundation to pay 70% of the taxes and maintenance charges of the property now due and to grow due as provided by the agreement. The defendant estate of Bernarr Macfadden, will be directed to pay 70% of the aforesaid taxes and carrying charges in accordance with the contract in the event that the Foundation defaults in the payment thereof.

Additionally, the judgment will provide that the title of the Foundation to the Englewood property is subject to plaintiff's right to use and occupy the same for life in accordance with the aforesaid agreement, and the defendants shall be enjoined from interfering with or disturbing plaintiff's possession. If plaintiff should for any reason not be

permitted to use the home in Englewood, the estate of Bernarr Macfadden would be required to provide plaintiff with a home under one of the alternative provisions of the agreement. With respect to this contingency, however, judgment is reserved until the situation calling for relief arises.

Judgment accordingly.